**STATE of Alaska, DEPARTMENT OF TRANSPORTATION AND PUBLIC FACILITIES, Appellant,**

v.

**HOUSTON CASUALTY COMPANY, Appellee.**

No. S–2793.

Supreme Court of Alaska.

Aug. 31, 1990.

Rehearing Denied Oct. 9, 1990.

Sanford M. Gibbs, Hagans, Brown, Gibbs & Moran, Anchorage, for appellant.

Robert B. Baker and Carl W. Winner, Robertson, Monagle & Eastaugh, Anchorage, for appellee.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Justice.

## I. INTRODUCTION.

On February 7, 1985 a Ryan Air, Inc. ("Ryan") aircraft struck and killed Clarence Douglas as he drove his snow machine across a closed portion of the Koyuk Airport runway. The Douglas estate subsequently brought a wrongful death action against Ryan. Ryan's insurer, the Houston Casualty Company ("Houston"), then obtained a release for Ryan by settling with the Douglas estate for $800,000, three-quarters of which was termed a "loan." The settlement obliged the estate to file a wrongful death action against the State Department of Transportation and Public Facilities ("DOT" or "the State"), for which Houston agreed to provide an attorney and to pay ninety percent of the estate's litigation expenses; the estate agreed in return to pay Houston ninety percent of any recovery from DOT up to the amount of the "loan." The agreement further provided that the estate could settle its suit at any time, with Houston agreeing to cancel any balance which might remain.

The estate filed suit alleging the State had been negligent in the design and maintenance of the Koyuk airstrip. In response, the State filed a third-party complaint against Houston for damages and for declaratory relief. The State contends that it is an additional insured under an insurance agreement between Houston and Ryan; that Houston waived all rights of subrogation against the State for payments made to secure Ryan's release; and that the loan-receipt agreement ("LRA") between the estate and Houston impermissibly circumvents policies underlying the Alaska Uniform Contribution Among Tortfeasors Act ("AUCTA"). See, e.g., AS 09.-

16.010(a), (b), (d); AS 09.16.040(1)–(2).[1] Houston disputes whether the State is an additional insured under the policy; presses an exclusion to the premises liability clause upon which the State relies; and defends LRAs generally.

As the parties note, contract interpretation "is treated in the same manner as a question of law"; we substitute our own judgment for that of the superior court. *Norton v. Herron*, 677 P.2d 877, 880 (Alaska 1984). To the extent our interpretation hinges on material issues of fact, inferences will be drawn in favor of the non-movant for summary judgment, the State. *Schneider v. Pay'N Save Corp.*, 723 P.2d 619, 623 (Alaska 1986). In this light, we conclude the State is covered under the Ryan policy, but that an exclusion defeats the State's premises clause claim. However, we approve the State's broader contention that "Houston agreed to waive all subrogation rights against the State for all claims made under the policy identified in the certificate of insurance [which Houston provided the State on Ryan's behalf], including claims arising out of Ryan's use of the State's premises and comprehensive public liability." We remand for determination whether Ryan was furnished coverage under the identified policy for the accident involving Clarence Douglas, and thus whether Houston is improperly seeking subrogation for payments made to the Douglas estate.

## II. THE INSURANCE AGREEMENT.

Ryan entered into a series of lease agreements with DOT in order to obtain space at various State airports. Each lease required Ryan to obtain "insurance to protect both the Lessor and Lessee against comprehensive public liability, products liability (where applicable) and property damage," and to indemnify and hold DOT harmless for any injuries "arising out of any acts of commission or omission by [Ryan], [Ryan's] agents, employees or customers, or arising from or out of [Ryan's] occupation or use of the Premises or privileges granted." Each lease further required that the insurance policy contain a clause waiving the insurer's right of subrogation against DOT. Ryan and DOT did not enter into a specific lease agreement for the use of premises at the Koyuk Airport.

DOT required Ryan's insurer, Houston, to fill out a "Certificate of Insurance" as proof that Ryan had obtained the insurance required by the lease. Houston issued a certificate covering the Ryan–DOT airport leases in December 1984. This certificate directed Houston to "read the insurance provision(s) of [Ryan's] lease agreement with the State"; identified the State as an "additional assured" under the Ryan–Houston policy; and indicated coverage for

---

1. The relevant provisions of this act are as follows:

Sec. 09.16.010. Right to contribution. (a) Except as otherwise provided in this chapter, where two or more persons become jointly or severally liable in tort for the same injury to person or property or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them.

(b) The right of contribution exists only in favor of a tortfeasor who has paid more than that tortfeasor's pro rata share of the common liability, and the total recovery of that tortfeasor is limited to the amount paid in excess of the pro rata share. No tortfeasor is compelled to make contribution beyond the tortfeasor's pro rata share of the entire liability.

. . . .

(d) A tortfeasor who enters into a settlement with a claimant is not entitled to recover contribution from another tortfeasor whose liability for the injury or wrongful death is not extinguished by the settlement nor in respect to any amount paid in a settlement which is in excess of what was reasonable.

. . . .

Sec. 09.16.040. Release or covenant not to sue. When a release or covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death

(1) it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide; but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and

(2) it discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor.

"Comprehensive Public Liability," "Owners, Landlords, & Tenants Liability," and "Premises," "Products," and "Hangarkeepers" liability.[2] The certificate further defined the "Premises or Operations covered" as "[a]ll airport premises and operations within the State of Alaska," and stated that Houston "waives all rights of subrogation against the State of Alaska by reason of any payment made for claim(s) under the above coverage."

While a binder for the policy became effective in November 1984, the actual policy did not issue until February 1985. The policy included coverage for "Aircraft Bodily Injury and Property Damage Legal Liability," "Passenger Legal Liability," and "Baggage Liability." "Extensions" provided coverage for "premises liability," "hangarkeepers liability," and "products liability." Only the "Bodily Injury," hangarkeepers and premises liability clauses are necessary to our disposition of this appeal.

### A. Hangarkeepers and Premises Liability.

The State claims coverage only "for damages arising out of the use of the insured's premises or elsewhere and/or hangar facilities."[3] As an initial matter, we discount the State's unelaborated claim to coverage under the hangarkeepers provision, which extends coverage only to "injury or damage ... to aircraft ... while not in flight." DOT concedes, and the policy provides, that an aircraft is "in flight" until safely landed.

The premises liability provisions insure injuries caused "in or about any premises owned or controlled by the Insured" or "elsewhere in the course of any work or the performance of any duties carried out by the Insured or his employees in connection with the business or operations of the Insured." An exception applicable only to premises liability excludes from such coverage any "bodily injury ... caused by ... Aircraft owned, chartered, used, or operated by or on account of the Insured."

### B. Bodily Injury Liability.

Finally, the "Bodily Injury" provision obligates Houston "[t]o pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages ... because of injury sustained by any person, excluding any passenger ... caused by an occurrence and arising out of ... the use of the aircraft specified" in the policy schedule. The policy expressly defines "injury" in this provision to include injuries resulting in death.

### III. PROCEEDINGS.

■ In granting Houston's motion for summary judgment, the superior court ruled that in the absence of a severability clause " 'the insured' means either the 'named insured' *or* 'any insured,' " citing *Marwell Construction v. Underwriters at Lloyds, London,* 465 P.2d 298, 304–05 (Alaska 1970). The court reasoned that as Ryan operated the aircraft which struck Douglas, the premises liability clause conferred no "benefit" upon the State.[4] The court also concluded that Houston had not subrogated a claim against its own insured, apparently for failure of the State's premises liability claim.[5] Finally, the court held that the settlement agreement between

---

2. While the certificate does not indicate liability limits for either "Comprehensive Public" or "Owners, Landlords & Tenants" liability coverage, the certificate refers by number to a policy whose express declaration provides this information.

3. The State's brief reads in relevant part:

The insurance policy provided Ryan coverage for bodily injury for damages to passengers and third parties arising out of the ownership, maintenance, or use of Ryan's aircraft. It also provided coverage for third parties for damages arising out of the *use of the insured's premises or elsewhere* and/or hangar facili-

ties. It is under this lat[t]er endorsement that the State claims coverage.
(Emphasis in original.)

4. The superior court held in the alternative that the premises clause covered only injuries which occurred at "actually leased" premises.

5. The State did not seek coverage under the bodily injury or other basic provisions of the Ryan policy, thereby waiving any such contention both at trial and on appeal. *See, e.g., Tolstrup v. Miller,* 726 P.2d 1304, 1307 n. 7 (Alaska 1986); *see also* note 3 *supra.*

Houston and the Douglas estate did not violate public policy. This appeal followed.

## IV. DISCUSSION.

### A. *The Superior Court Did Not Err In Denying DOT's Premises Liability Claim.*

■ A policy provision denying coverage which the insured has contracted to provide will not be given effect. *Stewart-Smith Haidinger, Inc. v. Avi-Truck, Inc.*, 682 P.2d 1108, 1117 (Alaska 1984).[6] The certificate of insurance, like a binder,[7] promised coverage both to DOT, as an additional insured, and to Ryan for "[a]ll airport premises and operations within the State of Alaska." We will not interpret the absence of an "additional insured" provision in the policy itself "impermissibly [to] alter[ ] the nature of [the] bargain" by wholly excluding DOT from coverage, as Houston appears to contend.[8] Rather, we conclude that DOT was covered under the Ryan policy, consistent with the parties' objective reasonable intentions. *See State v. Underwriters at Lloyds, London*, 755 P.2d 396, 400 (Alaska 1988); *Hillman v. Nationwide Mutual Fire Insurance Co.*, 758 P.2d 1248, 1250 (Alaska 1988); *see also Juliano v. Angelini*, 708 P.2d 1289, 1291 (Alaska 1985) (intent is a question of fact); *cf. State v. Oriental Fire & Marine Insurance Co.*, 776 P.2d 776, 779–80 (Alaska 1989) (certificate language construed to limit State's coverage).

■ Nevertheless, in the absence of a severability of interests clause or other "clearly stated condition[ ]" excluding the named insured (Ryan) from the term "insured,"[9] we conclude that the parties intended DOT's coverage to be co-extensive with, rather than independent from, Ryan's. *See Underwriters at Lloyds*, 755 P.2d at 399–400 (presence of severability clause relevant to scope of exclusion); *Marwell*, 465 P.2d at 305 (same). We therefore find persuasive Houston's argument that the premises clause excludes coverage on behalf of either insured for injuries caused by Ryan aircraft.[10]

### B. *However, the Superior Court Erred in Holding That Houston Did Not Violate Its Agreement to Waive Subrogation Against the State.*

■ Our review of the record does not identify the source of Houston's settlement with the Douglas estate on Ryan's behalf. However, as noted above, the State has alleged that Houston's settlement with the estate breached the insurer's agreement "to waive all subrogation rights against the State for all claims made under the policy ... including claims arising out of Ryan's ... comprehensive public liability." The proper inference on summary judgment is that Houston may have satisfied the estate's claim against Ryan Air under the bodily injury or other provision of the policy, and that the parties intended this provision to fulfill the insurer's certified intent to provide comprehensive coverage. We remand for determination whether Ryan enjoyed coverage under the identified policy for the accident which befell Clarence

---

**6.** In *Stewart-Smith* the parties agreed in a binder that the insured would be covered for certain liabilities arising out of airplane crashes. 682 P.2d at 1111, 1117. When the insured's plane crashed, the insurer relied upon a provision in the policy excluding coverage for accidents in which the insured's plane was involved. *Id.* at 1111, 1117. We held that this exclusionary language should be ignored, and that while the exclusion would normally be valid, it was invalid in the circumstance where a form policy provision applied to a particular insured so as to negate promised coverage. *Id.* at 1117.

**7.** Houston's Underwriting Vice President stated in deposition that the certificate evidenced DOT's insured status.

**8.** Similarly, the absence of a waiver of subrogation clause in the policy relieves Houston of no material duty vis-a-vis the State.

**9.** *See Rig Tenders, Inc. v. Santa Fe Drilling Co.*, 585 P.2d 505, 508 (Alaska 1978).

**10.** We note that the premises liability "extension" would otherwise provide DOT with almost limitless coverage for all Ryan (as well as DOT) operations, which we conclude the parties did not intend. The general propositions cited in, e.g., *Starry v. Horace Mann Ins. Co.*, 649 P.2d 937, 939–40 (Alaska 1981) (construing homeowner's policy), will not create coverage which an insured may not reasonably expect. Note 5 of the concurrence is in accord.

Douglas, and thus whether Houston has improperly subrogated a claim against the State.[11] Houston may not indirectly subrogate against the State a claim for which the State could reasonably expect Ryan to be insured. *See Marathon Oil Co. v. Mid–Continent Underwriters*, 786 F.2d 1301, 1304 (5th Cir.1986) (settling defendant may not use plaintiff as a "cat's paw" to do what the settling defendant was contractually bound not to do on its own—seek subrogation).

AFFIRMED in part, REVERSED in part, and REMANDED for proceedings consistent with this opinion.

MATTHEWS, C.J., joined by BURKE, J., concur.

MATTHEWS, Chief Justice, joined by BURKE, Justice, concurring.

I disagree with part IV.A. of the opinion, which holds that the phrase "aircraft of the insured" means "aircraft of either the named insured or the additional insured who is seeking coverage" rather than "the aircraft of the insured who is seeking coverage." It is my view that the phrase refers exclusively to the insured who is seeking coverage. My reasons for this conclusion follow.

First, in the absence of a severability of interests clause[1], an insurance policy is ambiguous as to whether or not the use of the term "the insured" in an exclusion refers merely to the insured seeking coverage or to the insured seeking coverage and to the named insured. Ordinarily, ambiguities in insurance contracts are to be resolved in favor of that interpretation which results in coverage. *Starry v. Horace Mann Ins. Co.*, 649 P.2d 937, 939 (Alaska 1981) ("Ambiguities must be resolved

against the insurer."); *Puritan Life Ins. Co. v. Guess*, 598 P.2d 900 (Alaska 1979). On this basis, a number of courts in other jurisdictions have concluded that, in the absence of a severability of interests clause, the term "the insured" as used in an exclusion refers only to the particular insured who is seeking coverage. *E.g., Pleasant Valley Lima Bean Growers and Warehouse Association v. Cal–Farm Insco.*, 142 Cal.App.2d 126, 298 P.2d 109 (1956); *Industrial Indemnity Co. v. Continental Casualty Co.*, 375 F.2d 183 (10th Cir.1967); *Cimarron Insurance Co. v. Travelers Insurance Co.*, 224 Or. 57, 355 P.2d 742 (1960); 48 ALR 3d 13, 88 § 28; 50 ALR 2d 78, 97 § 6. I agree with this rationale.

Second, insurance companies intend that the term "the insured" as used in an exclusion apply only to the insured who is seeking coverage. That is the conclusion reached in N. Risjord & J. Austin, *"Who is 'The Insured'" Revisited*, 28 Ins. Couns. J. 100.[2] The article states:

> The punchline is this: the term "the insured" means, and means *only*, the *person claiming coverage*, or (to put it another way) *only* the person coverage for whom is the issue.

*Id.*, (emphasis in original). The article goes on to explain that the severability of interests clause became current in 1955 and was intended to clarify what insurance companies had intended all along, namely that the term "the insured" in an exclusion refers merely to the insured claiming coverage:

> From a date at least no later than 1940, it was clearly understood by the insurance companies participating in the standard provisions program that, as stated above, "the insured" meant *only* the person claiming coverage, and that

**11.** If Houston has breached its contractual promise not to subrogate covered claims, the superior court shall declare the "loan" and subrogation portions of the settlement agreement invalid. In this event, per the settlement's own terms, the "settlement shall be deemed an outright settlement for [$800,000] rather than a loan receipt settlement." Such a result would make it unnecessary for this court to address the State's challenge to the validity of LRAs in the joint tortfeasor context.

**1.** Such a clause states typically that "the term 'the insured' is used severally and not collectively." *State v. Underwriters at Lloyds, London*, 755 P.2d 396, 399 (Alaska 1988); *Marwell Const. Inc. v. Underwriters at Lloyds, London*, 465 P.2d 298, 305 (Alaska 1970).

**2.** Each of the authors were officers of liability insurance companies when this article was published.

the employee exclusion denied coverage to *any* insured *only* with respect to injury to *his* employee. By 1954, a majority of the reported decisions was to the contrary. Ironically, this is the only known situation where many of the courts persist in erring in *favor* of the insurance companies!

As a result, in 1954, the present writers, in "Who is 'The Insured' " asserted that "the insured" was *only* the person claiming coverage. The 1955 revisions of the standard provisions promulgated by the National Bureau of Casualty Underwriters and the Mutual Insurance Rating Bureau carried a new condition labeled "Severability of Interests", intended to express the purpose formerly implied and to avoid further erroneous decisions on this subject.

*Id.* at 101 (emphasis in original, footnotes omitted).

Third, the construction of the clause employed by the majority opinion would serve to defeat the reasonable expectations of the state. The lease agreements between Ryan and the state required Ryan to obtain "insurance to protect both the [state] and [Ryan] against comprehensive public liability, products liability ... and property damage." Certainly the core purpose of this provision was to provide coverage to the state for claims related to Ryan's use of the leased premises. This purpose could readily be frustrated under today's opinion. For example, the insurance agreement here has an employee exclusion, as well as an aircraft exclusion. The former states that the policy does not apply "to bodily injury to ... any employee of the insured...."

Thus, if a Ryan employee working on the leased premises were injured on or adjacent to the leased premises by reason of the negligence of the state, the state would not be protected.[3] Since the majority's reading of the term insured would plainly run counter to the central expectation of the contracting parties and deny coverage in this situation, it seems demonstrably wrong.[4]

Nonetheless, I concur in the result. In my view the policy should not be construed to apply to airports at which Ryan has no lease agreement with the state. Ryan had entered lease agreements with the state at Nome, Unalakleet, Kotzebue and McGrath. As Ryan had no lease at the Koyuk airport where the accident took place, the state is not afforded coverage in this case.[5]

---

3. This is hardly an unlikely hypothetical. In *Duty Free Shoppers Group Ltd. v. State*, 777 P.2d 649 (Alaska 1989), an employee of an airport premises lessee prosecuted such a claim against the state and obtained a substantial settlement.

4. Insurance contracts are to be construed so that they give effect to the reasonable expectations of the contracting parties. *Potter v. Ranger Ins. Co.*, 732 F.2d 742 (9th Cir.1984) (applying Alaska law); *Hahn v. Alaska Title Guarantee Co.*, 557 P.2d 143 (Alaska 1976). Here, even the appellee acknowledges that the state expected coverage "against liability arising out of Ryan's lease of clearly defined premises...."

5. My interpretation is not without its own analytical difficulty because the policy language contains no geographical limitation. The policy provides the state with premises coverage for liability arising "(a) in or about any premises owned or controlled by the [state] and (b) elsewhere in the course of any work or the performance of any duties carried out by the [state]." Such language could be interpreted to cover the state for claims arising anywhere, but that interpretation is unreasonably broad.