STATE of Alaska, DEPARTMENT OF
TRANSPORTATION AND PUBLIC
FACILITIES, Appellant,

v.

STATE FARM FIRE AND CASUALTY
COMPANY, an Illinois Corporation,
Appellee.

No. S–7513.

Supreme Court of Alaska.

May 16, 1997.

Rehearing Denied June 4, 1997.

Michael C. Geraghty, Sarah Diemer Moyer, DeLisio Moran Geraghty & Zobel, Anchorage, for Appellant.

Rod R. Sisson, Crosby & Sisson, P.C., Anchorage, for Appellee.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH and FABE, JJ.

## OPINION

MATTHEWS, Justice.

Adrian Sanders sued the State of Alaska for injuries suffered when he collided with a train of baggage carts on a public road at Anchorage International Airport. The carts were travelling from a warehouse on state land that had been leased and subleased. As required by the lease, the lessees obtained a liability insurance policy naming the State as an insured. The question in this case is whether the liability insurer has a duty to defend the State in the Sanders litigation. Based on the language of the policy and the nexus between the accident and the use of the leased premises, we answer in the affirmative.

## I. FACTS AND PROCEEDINGS

The State of Alaska leased an airport lot on which a warehouse was located to B and R Properties, Inc. The authorized use for the property was "Warehouse for air freight forwarding." The lease was assigned to Sam and Rebecca Fox–Krogstad who sublet warehouse and office space to United Airlines. As required by the lease, the Krogstads purchased a liability insurance policy from State Farm in which the State was named as an additional insured.

A complaint was filed against the State and United Airlines by Adrian Sanders. Summarized, the complaint alleges that on July 2, 1992, at 12:30 a.m., Sanders was injured when his motorcycle crashed into a United Airlines baggage train on a public road. The baggage train was being operated "without any warning lights, tail lights, brake lights, turn signals, or adequate reflectors, or other indicia of slow-moving vehicles, and without any other warning devices." The complaint further alleges the road did not have adequate warning or advisory signs, and had no signs warning of slow-moving vehicles. The State knew of the practice of driving such vehicles without warning lights and condoned it. At the time of the accident, United Airlines was transporting cargo from what has now been identified as the leased

premises to the airport ramp area to load the cargo onto aircraft. The complaint further alleges that the State failed "to provide for adequate ingress, egress, and transportation procedures from the [leased premises] which [United Airlines was] using to consolidate and to forward the cargo in question to the airport ramp and/or the airport apron area." Finally, the complaint alleges that the State and United Airlines forced or coerced law enforcement personnel to refrain from enforcing the applicable traffic laws.

The complaint alleges a number of causes of action against the State which are relevant to this case: negligence, defective product and/or defective systems, negligent design of the roadway system, and breach of the duties owed by a landlord to a tenant.

The State tendered the defense of the case to State Farm. State Farm agreed to defend subject to a reservation of rights to later disclaim coverage. Two potential coverage defenses were asserted: First, that the "acts and omissions of [the State] alleged by Sanders' complaint ... are outside of the scope of the risk for which [the State] could reasonably expect coverage under the policy and, therefore, are not covered by the policy." Second, that the claims are excluded from coverage by the professional services exception. State Farm offered to defend the State with counsel selected by State Farm or, in view of *CHI of Alaska, Inc. v. Employers Reinsurance Corp.*, 844 P.2d 1113 (Alaska 1993), with independent counsel chosen by the State. The State elected to be defended by independent counsel which it selected.

During the pendency of the Sanders litigation, State Farm filed a complaint against the State seeking a declaratory judgment that it did not have a duty to defend or indemnify the State. The State moved for partial summary judgment with respect to State Farm's duty to defend and State Farm filed a cross-motion. The superior court granted summary judgment to State Farm, and entered a judgment declaring that State Farm has no duty to defend or obligation to indemnify the State in the Sanders litigation. The State appeals.

## II. DISCUSSION

### A. Standard of Review

■ This court reviews a grant of summary judgment using its independent judgment. *K & L Distributors, Inc. v. Kelly Electric, Inc.*, 908 P.2d 429, 431 (Alaska 1995). Summary judgment is to be granted only when the record indicates that "there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." Alaska R.Civ.P. 56(c); *Hale v. Fireman's Fund Ins. Co.*, 731 P.2d 577, 579 (Alaska 1987). "The construction of an insurance contract is a matter for the court, unless its interpretation is dependent upon the resolution of controverted facts." *O'Neill Investigations, Inc. v. Illinois Employers Ins. of Wausau*, 636 P.2d 1170, 1173 (Alaska 1981). Neither party argues that there are any genuine issues of material fact concerning the duty to defend. The State argues that the duty to indemnify cannot be determined until the facts of the underlying litigation are determined, therefore precluding summary judgment on this issue at this time.

### B. Relevant Policy Provisions

The basic insuring agreement is found in Coverage L—Business Liability. It provides:

We will pay those sums that the insured becomes legally obligated to pay as damages because of **bodily injury** ... to which this insurance applies.... This insurance applies only:

1. to **bodily injury** ... caused by an **occurrence** which takes place in the **coverage territory** during the policy period;

2. to **personal injury** caused by an **occurrence** committed in the **coverage territory** during the policy period. The **occurrence** must arise out of the conduct of your business....

The policy period includes the date of the accident in question and the coverage territory is defined to include "the United States of America."

The defense clause of the policy provides as follow:

## RIGHT AND DUTY TO DEFEND

We will have the right and duty to defend any claim or **suit** seeking damages payable under this policy even though the allegations of the **suit** may be groundless, false or fraudulent.

Exclusion 10 to Coverage L relates to "professional services or treatments." It provides:

Under Coverage L, this insurance does not apply:

10. to **bodily injury** ... due to rendering or failure to render any professional services or treatments. This includes but is not limited to:

   a. legal, accounting or advertising services;

   b. engineering, drafting, surveying or architectural services, including preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

   c. supervisory or inspection services;

"Personal injury" and "bodily injury" have different meanings under the policy:

11. **personal injury** means injury, other than **bodily injury**, arising out of one or more of the following offenses:

   a. false arrest, detention or imprisonment;

   b. malicious prosecution;

   c. wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, by or on behalf of its owner, landlord or lessor;

   d. oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

   e. oral or written publication of material that violates a person's right of privacy[.]

"Bodily injury" is defined as follows:

3. **bodily injury** means **bodily injury**, sickness or disease sustained by a person, including death resulting from the **bodily injury**, sickness or disease at any time[.]

C. *Relevant Lease Provisions*

The following are relevant portions of the lease:

*AUTHORIZED USES:*

2. This lease is issued for the following authorized uses:

Warehouse for air freight forwarding

*LIABILITY*

16. The Lessee shall indemnify, defend, and hold the Lessor harmless from any liability, action, claim, suit, loss, property damage, or personal injury of whatever kind resulting from or arising out of any act of commission or omission by the Lessee, his agents, employees, or customers or arising from or connected with the Lessee's use and occupation of the Premises or the exercise of the rights and privileges granted by this lease.

*INSURANCE*

17. (a) At no expense to the Lessor, the Lessee shall secure and keep in force during the term of this lease adequate insurance to protect both the Lessor and the Lessee against comprehensive public liability and property damage in no less than the following amounts

   (i) Property damage arising from one occurrence in the amount of not less than $50,000.

   (ii) Personal injury or death in an amount of not less than $100,000 per person and $300,000 per occurrence.

(b) The Lessee shall provide the Lessor with proof of insurance coverage in the form of an insurance policy or a certificate of insurance, together with proof that the premiums have been paid. All insurance required by this covenant must:

   (i) name the Lessor as an additional assured;

   (ii) provide that the Lessor be notified at least thirty (30) days prior to any termination, cancellation, or material change in the insurance coverage; and

(iii) include a waiver of subrogation by which the insurer waives all rights of subrogation against the Lessor for payments made under the policy.

(c) The requirement of insurance coverage does not relieve the Lessee of any other obligations under this agreement.

*ASSIGNMENT OR SUBLEASE*

20. The Lessee may not assign nor sublet, either by grant or implication, the whole or any part of the Premises or any improvements thereon without the written consent of the Lessor. Any proposed assignment, lease, or sublease must be submitted to the Lessor for approval in five (5) copies, each bearing the original notarized signature of all parties. All covenants and provisions in this agreement extend to and bind the legal representatives, successors, and assigns of the parties.

*SPECIAL COVENANTS*

3. The Lessee covenants and agrees that no less than ninety per cent (90%) of the material stored and handled on the premises shall be material being shipped in and/or out of Anchorage International Airport by air.

The consent to sublease to United Airlines provided in relevant part:

The State of Alaska, Lessor in Agreement ADA–30091, by and through its Administrative Officer, Anchorage International Airport, Department of Transportation and Public Facilities, acknowledges a sublease dated November 17, 1988, between Sam Krogstad and Rebecca Fox–Krogstad, the Lessee, and United Airlines, hereinafter called the Sublessee for 5,072 square feet of warehouse space and 1,496 square feet of office space in the building located on Lot 6, Block 5 on Anchorage International Airport. The Lessor consents to the Lessee entering into this sublease provided that the Lessee remain responsible to the Lessor for compliance with all the terms of Lease Agreement ADA–30091. This consent specifically excludes activity not related to aviation and use of office space for any business not directly related to aviation.

D. *State Farm Has a Duty to Defend the State*

■ "Liability insurers have separate duties to defend and indemnify their insureds." *CHI of Alaska, Inc. v. Employers Reinsurance Corp.*, 844 P.2d 1113, 1115 (Alaska 1993). "[An] insurer may have an obligation to defend although it has no ultimate liability under the policy." *Afcan v. Mutual Fire Marine & Inland Ins. Co.*, 595 P.2d 638, 645 (Alaska 1979). Under a standard duty to defend clause like that set out in State Farm's policy in this case, the insurer must defend the insured *"whenever* a complaint states a cause of action within, or potentially within, the policy coverage." *Id.* The factual allegations made in the complaint of the underlying litigation determine whether there is a duty to defend. *Id.* at 644. Where the facts alleged in the complaint, if proven, would give rise to a finding of liability covered by the policy, the insurer must defend the insured. *Id.* at 645.[1] The duty to defend is triggered if there is at least one cause of action alleged in the complaint for which there is a possibility of coverage under the policy. *Sauer v. Home Indem. Co.*, 841 P.2d 176, 181 (Alaska 1992). The presence of additional causes of action not covered by the policy does not defeat the duty to defend. *Id.*

Under the bodily injury coverage of State Farm's policy, Sanders's negligence claims against the State are within policy coverage. The only limitations on coverage relevant to these claims are that the accident must have

---

**1.** Extrinsic facts known by the insurer which would defeat the duty to defend are not considered by the court in determining the duty to defend. *Sauer v. Home Indem. Co.*, 841 P.2d 176, 182 (Alaska 1992). However, extrinsic facts known by or reasonably ascertainable to the insurer which would bring an otherwise uncovered complaint within the policy's coverage are considered by the court. *Afcan v. Mutual Fire, Marine & Inland Ins. Co.*, 595 P.2d 638, 646 (Alaska 1979). There are no such facts alleged in this case.

taken place somewhere in the United States during the policy period.[2]

State Farm argues, however, that interpreting the policy literally would be unreasonable, for coverage would extend to all conduct of the State within the United States. State Farm contends that an implied limitation should be read into the policy limiting coverage to "risks that arise from the use of the premises by the lessee." State Farm argues:

> The scope of coverage question may be stated thus: Is the coverage of [the State] under the policy limited in some fashion to parameters of location and conduct, or does it extend to *all* of the premises and conduct of [the State], wherever located and whatever involved? If the policy is read as broadly as possible in favor of [the State], then the covered risks would arguably include all of the activities of [the State], no matter what and no matter where, limited only by the policy's conditions and exclusions. Normally, the rule for construing insurance agreements is that they should be read broadly in favor of the insured. Yet, under the circumstances here, requiring the policy to cover [the State] for all of its activities cannot be the reasonably expected result of State Farm issuing a certificate of insurance to help Krogstad comply with the lease. Logic and fairness would dictate some limitation on the risk of an insurer that issues a certificate of insurance under these circumstances.

We agree with State Farm that construing the policy literally would lead to unreasonably broad coverage.[3] Coverage should be limited to claims that have a fair relationship to the use of the leased premises. Absent evidence the parties clearly intended to impose such a broad obligation, a lease clause requiring the lessee to buy insurance protecting the lessor cannot reasonably be read to require the lessor to provide insurance coverage for claims which do not arise out of or are not incidental to such uses.[4] We thus limit the application of the policy in this case to claims which arise out of or are incidental to uses of the premises under the lease.[5] We impose this limit as an exercise of the court's power to "limit the application of any unconscionable term as to avoid any unconscionable result." Restatement (Second) of Contracts § 208 (1979).

The accident out of which Sanders's claims arise readily falls within these limits. The baggage train he collided with was moving baggage to the airport from the warehouse on the leased premises. The premises were being used for their authorized purpose, as a "warehouse for air freight forwarding," for "materials shipped in and/or out of Anchorage International Airport by air." *See* authorized uses and special covenants lease clauses *supra*, pp. 7–8. Moving baggage from the warehouse to the airport is an activity which arises out of the use of the premises for their authorized purpose and is, to say the least, incidental to their use.[6]

---

**2.** Claims resulting in personal injury have an additional limitation. They must arise out of the conduct of the State's business. *See supra* p. 790. However, Sanders's claims are for bodily injury (injuries to the body) rather than personal injury (injuries to personal rights) as those terms are used in the policy.

**3.** *See State, Dep't of Transp. & Pub. Facilities v. Houston Casualty Co.*, 797 P.2d 1200, 1206 n. 5 (Alaska 1990) (Matthews, J., concurring) (construing State lessee's policy to insure the State with no geographical limitation would result in "unreasonably broad" coverage).

**4.** *See Houston Casualty*, 797 P.2d at 1206 (Matthews, J. concurring) ("[T]he core purpose of this provision was to provide coverage to the State for claims related to [the lessee's] use of the leased premises."); *State v. Underwriters at Lloyds, London*, 755 P.2d 396, 399–400 (Alaska

1988) (claim arising out of operations "necessary or incidental" to lessee's use of leased premises held covered).

**5.** Stricter limits could be imposed. However, in view of the rule that insurance contracts should be read most favorably to the insured, *e.g., Bering Strait Sch. Dist. v. RLI Ins. Co.*, 873 P.2d 1292, 1295 (Alaska 1994), we believe that the policy should be limited only to the extent necessary to avoid an unconscionable result.

**6.** *See Underwriters at Lloyds*, 755 P.2d at 400 (airplane taxiing is an operation "necessary or incidental" to airline's use of leased gates, ticket counter and baggage area); *Hale v. Fireman's Fund Ins. Co.*, 731 P.2d 577, 579–80 (Alaska 1987) (unloading produce away from leased premises is an operation "necessary or incidental" to use of a produce stand).

The fact that the premises were subleased does not sever the required connection between the claim and the use of the premises. The lessees were not exonerated by the sublease from performance of their duties under the lease. *See* covenant to sublease, *supra,* p. 9. One such duty was maintaining liability insurance. Further, subleasing was a privilege "granted by this lease" under the liability clause of the lease and the sublessee's uses were, as noted, consistent with the purposes of the lease.

State Farm's claim that the professional services exclusion excludes coverage lacks merit with respect to all of the claims against the State except for the negligent design claim.[7] As noted above, the fact that one claim may be excluded by a policy provision does not relieve an insurer from its obligation to defend where there are other claims which are not excluded. *Sauer,* 841 P.2d at 181.[8]

## III. *CONCLUSION*

For these reasons the judgment of the superior court is reversed. This case is remanded with directions to enter a declaratory judgment in favor of the State, declaring that State Farm has a duty to defend the State in the Sanders litigation.

**REVERSED and REMANDED.**

---

7. Even as to the defective design claim, it is questionable whether the professional services exclusion applies. The cases to which we have been cited concerning this exclusion refer to services which are performed for others and for which actions in the nature of malpractice may be brought. *Hollingsworth v. Commercial Union Ins. Co.,* 208 Cal.App.3d 800, 256 Cal.Rptr. 357 (1989) (applying exception to ear piercing done by retail cosmetic store); *Merchants Mut. Ins. Co. v. City of Concord,* 117 N.H. 482, 374 A.2d 945 (1977) (applying exception where city failed to provide medical or psychiatric care to detainee); *Multnomah County v. Oregon Auto. Ins. Co.,* 256 Or. 24, 470 P.2d 147 (1970) (applying exception where medical attendant failed to give insulin to diabetic inmate). No case has been cited which holds that the professional services exclusion applies to services which an insured performs for itself which result in a dangerous physical condition.

8. State Farm argues that construing the insurance policy to cover off-premise accidents on public roads would violate the public duty exception. This argument fails. The indemnification agreement does not give the State a general disincentive regarding the maintenance of public streets. *See Burgess Constr. Co. v. State,* 614 P.2d 1380, 1381–82 (Alaska 1980).