UNITED AIRLINES, INC., Appellant,

v.

STATE FARM FIRE & CASUALTY COMPANY, Appellee.

No. S–9672.

Supreme Court of Alaska.

July 26, 2002.

See also, 939 P.2d 788 and 944 P.2d 453.

William F. Brattain II, Baker Brattain, LLC, Anchorage, for Appellant.

Rod R. Sisson, Sisson & Knutson, Anchorage, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

## OPINION

EASTAUGH, Justice.

## I. INTRODUCTION

Adrian Sanders sued the State of Alaska and United Airlines, Inc. (UAL) for injuries he suffered when his motorcycle struck a UAL baggage cart train. The baggage train originated from premises subleased to UAL. The state had leased the premises to the Krogstads, who had subleased them to UAL. Does the Krogstad/UAL sublease require UAL to indemnify and hold harmless the Krogstads and their subrogated liability insurer, State Farm, against claims arising from Sanders's injuries? Because Sanders's claims against the state and the state's claim against the Krogstads were "in connection with ... personal injury arising from or out of any occurrence" at UAL's subleased premises "or from [UAL's] use" of those premises, the sublease required UAL to indemnify the Krogstads' insurer for amounts the insurer paid to discharge Sanders's claims. We therefore affirm the superior court's grant of summary judgment against UAL.

## II. FACTS AND PROCEEDINGS

The present appeal arises out of Adrian Sanders's July 1992 motorcycle accident. We addressed legal disputes resulting from the accident on two prior occasions.[1] Sanders was riding his motorcycle on Old International Airport Road in Anchorage when he struck the rear of a slow-moving baggage train comprised of a baggage tug and five baggage carts.[2] The accident occurred near Anchorage International Airport, a facility operated by the State of Alaska.[3] The state condoned UAL's practice of operating baggage trains on the road without warning lights.[4] When the accident occurred UAL was transporting cargo to the airport ramp area from nearby property it leased from Rebecca Fox–Krogstad and Sam Krogstad.[5] The Krogstads leased the property from the state and subleased it to UAL.[6]

The state informed the Krogstads in July 1993 that the state had received a letter from Sanders threatening litigation. The state told them it expected the Krogstads to indemnify and defend the state against Sanders's claims. The Krogstads' potential liability to the state arose from the lease agreement between the Krogstads, as lessee, and the state, as lessor; we refer to this agreement as the state/Krogstad lease.[7] In an August 1993 letter the Krogstads informed UAL of the state's claim against the Krogstads, and invoked UAL's "obligations to 'indemnify, defend and hold [the Krogstads] harmless' for and from any claim, loss, liability, and expense ... arising out of [Sanders's accident]." UAL's potential liability to the Krogstads arose from the sublease between UAL, as lessee, and the Krogstads, as lessor; we refer to this agreement as the Krogstad/UAL sublease.[8] UAL rejected the Krogstads' tender.

1. *State, Dep't of Transp. v. State Farm (State Farm I)*, 939 P.2d 788 (Alaska 1997); *State, Dep't of Transp. v. Sanders*, 944 P.2d 453 (Alaska 1997).

2. *State Farm I*, 939 P.2d at 789.

3. *Sanders*, 944 P.2d at 455 & n. 1.

4. *State Farm I*, 939 P.2d at 789.

5. *State Farm I*, 939 P.2d at 789–90.

6. *Id.* at 789.

7. Section 16 of the state/Krogstad lease required the Krogstads to indemnify the state for liability relating to the leased property:

   The [Krogstads] shall indemnify, defend, and hold the [state] harmless from any liability, action, claim, suit, loss, property damage, or personal injury of whatever kind resulting from or arising out of any act of commission or omission by the [Krogstads], [their] agents, employees, or customers or arising from or connected with the [Krogstads'] use and occupation of the Premises or the exercise of the rights and privileges granted by this lease.

   Section 17 of the state/Krogstad lease obliged the Krogstads to obtain insurance to protect the state and the Krogstads:

   (a) At no expense to the [state], the [Krogstads] shall secure and keep in force during the term of this lease adequate insurance to protect both the [state] and the [Krogstads] against comprehensive public liability and property damage in no less than the following amounts: (i) Property damage arising from one occurrence in the

amount of not less than $50,000. (ii) Personal injury or death in an amount of not less than $100,000 per person and $300,000 per occurrence .... (b) ... All insurance required by this covenant must ... (iii) include a waiver of subrogation by which the insurer waives all rights of subrogation against the [state] for payments made under the policy.

8. Section 7.1 of the sublease sets out UAL's obligation to acquire insurance and to include the Krogstads as an additional insured.

   At no expense to [the Krogstads], [UAL] shall obtain and keep in force and effect during the term of this Lease, a policy of comprehensive public liability insurance insuring [UAL] against any liability arising out of the ownership, use, occupancy, or maintenance of the Premises and all areas appurtenant thereto, and naming [the Krogstads] as an additional insured to the extent of the liability assumed by [UAL] under Paragraph 7.5 herein. Such insurance shall be in an amount of not less than $500,000 for injury to or death of one person in any one accident or occurrence and in an amount of not less than $1,000,000 for injury to or death of more than one person in any one accident or occurrence. Such insurance shall further insure [UAL] against liability for property damage of at least $100,000. The limits of said insurance shall not, however, limit the liability of [UAL] hereunder. If [UAL] shall fail to procure and maintain said insurance, [the Krogstads] may, but shall not be required to, procure and maintain the same at the expense of [UAL].

   Section 7.5(b) of the sublease sets out UAL's duty to indemnify for injury or property loss:

The Krogstads also informed State Farm, their insurer, of Sanders's potential claim against the state and the state's potential claim against the Krogstads. State Farm acknowledged that the Krogstads' insurance policy covered claims arising from Sanders's accident, but expressed its belief that UAL was the proper party to handle the investigation and potential claims.

Sanders filed a complaint against UAL, the state, and others in June 1994. The complaint alleged a number of causes of action against the state, including negligence, defective product or systems, negligent design of the roadway system, and breach of duties owed by a landlord to a tenant.[9] As an insured under the Krogstads' State Farm policy, the state tendered its defense and demand for indemnity to State Farm. State Farm rejected the state's tender, reasoning that the policy did not cover Sanders's claims. State Farm later agreed to defend the state subject to a reservation of rights to disclaim coverage.

The state filed a third-party complaint in October 1996 against the Krogstads based on the indemnity provision of the state/Krogstad lease. The complaint claimed that the indemnity provision covered any damages awarded against the state arising out of Sanders's complaint, including all expenses incurred by the state in defending itself. Invoking the terms of the Krogstad/UAL sublease, the Krogstads then asked UAL to indemnify and defend them against the state's claims. UAL again rejected the Krogstads' tender.

We held in May 1997 that State Farm had a duty to defend the state because the accident arose out of the use of the leased premises for their authorized purpose.[10] The Krogstads sought judgment in November 1997 requiring UAL to pay for the Krogstads' defense against the state's third-party complaint. The state resolved its third-party claim in April 1998 following our decisions in *State, Department of Transportation v. State Farm*[11] and *State, Department of Transportation v. Sanders.*[12] Sanders settled with the state on April 21, 1998 for $2.09 million.[13] On the same date the state released, upon receipt of $1.77 million, the Krogstads and their insurers from any third-party liability related to Sanders's accident and the resulting litigation. State Farm paid the $1.77 million. UAL settled with Sanders for $2,275,000.

The superior court permitted State Farm to substitute for the Krogstads in their complaint against UAL in June 1998. State Farm's fourth-party complaint stated that "UAL is liable under the [Krogstad/UAL sublease] for the $1,770,000 paid to the State by State Farm to settle the State's third-party complaint against the Krogstads ... [and] for all fees and costs incurred by State Farm in defending the Krogstads against the State's third-party complaint." UAL moved and State Farm cross-moved for summary judgment. The superior court denied UAL's summary judgment motion and granted State Farm's cross-motion in February 2000. Final judgment was entered for State Farm in April 2000 for: $1.77 million, representing the settlement amount between the Krogstads and the state; $31,641.01, representing the reasonable attorney's fees and costs State Farm incurred in the summary judgment proceedings against UAL; and $31,954.55, representing the reasonable attorney's fees and costs the Krogstads incurred in defending against the state's third-party claim.

UAL appeals.

[UAL] shall indemnify, defend, and hold harmless [the Krogstads] from all suits, actions, damages, liability, and expenses in connection with loss of life, bodily or personal injury, or property damage arising from or out of any occurrence at the Premises, or from the use by [UAL] or [UAL's] agents, contractors, employees, servants, invitees, or licensees of the Premises and the Complex including, but not limited to, sidewalks, common areas, and facilities within the Complex, unless caused by the negligence of [the Krogstads], [their] agents, contractors, employees, servants, invitees, or licensees.

9. *State Farm I*, 939 P.2d at 793.

10. *Id.*

11. 939 P.2d 788 (Alaska 1997).

12. 944 P.2d 453 (Alaska 1997).

13. The state also paid $110,000 to Sanders's minor son.

## III. DISCUSSION

### A. Standard of Review

■ We review a grant of summary judgment de novo.[14] A summary judgment movant must establish that there "are no genuine issues of material fact and that it is entitled to judgment as a matter of law."[15] We will draw all reasonable factual inferences in favor of UAL, the party opposing summary judgment.[16] But "[w]hen there is no dispute about the factual circumstances surrounding [a] contract, the interpretation of an indemnity provision presents a question of law."[17]

### B. The Superior Court Did Not Err in Granting Summary Judgment to State Farm.

#### 1. The plain language of the indemnity clause in the Krogstad/UAL sublease requires UAL to indemnify and defend the Krogstads against the state's third-party claim.

■ UAL argues that the indemnity provision, section 7.5(b) of the Krogstad/UAL sublease, does not require it to indemnify or defend the Krogstads against the state's third-party claim.[18] The provision requires UAL to indemnify the Krogstads "from all suits, actions, damages, liability, and expenses *in connection with ... personal injury ... arising from or out of any occurrence at the Premises,* or *from the use by* [UAL] *... of the Premises ....*" (Emphasis added.) UAL argues that the Krogstads' potential liability—on a claim asserted by Sanders against the state and tendered to the Krog-

stads for defense and indemnity—did not "aris[e] from or out of" any occurrence at or UAL's use of the premises. We are unpersuaded. The state's third-party complaint against the Krogstads clearly arose from UAL's operation of the baggage cart in connection with UAL's use of the premises subleased to UAL by the Krogstads.

UAL argues that the indemnity provision of the state/Krogstad lease is broader than that of the Krogstad/UAL sublease because "the Krogstads contracted to indemnify the State for any and all claims related to the property, even for the State's own negligence. UAL assumed no such broad obligations to the Krogstads." UAL is correct that it owes the Krogstads no duty to indemnify them for their own negligence.[19] But the Krogstads' liability to the state was not due to the Krogstads' negligence.

UAL also argues that the term "Lessor" in section 7.5(b) of the Krogstad/UAL sublease includes the state. The relevant portion of section 7.5(b) exempts UAL from liability "caused by the negligence of Lessor, its agents, contractors, employees, servants, invitees, or licensees." UAL states in a parenthetical comment in its brief that this passage includes "the Krogstads and the Krogstad[s'] lessor-the State of Alaska...." This reading would excuse UAL from its indemnity duty, but we reject UAL's interpretation. The Krogstad/UAL sublease clearly defines "Lessor" to be Sam and Rebecca Fox–Krogstad.[20] There is no support in the record for UAL's interpretation of the term "Lessor." And UAL's interpretation is at odds with the plain meaning of the term "Lessor" as it appears in the Krogstad/UAL sublease.

14. *State Farm I,* 939 P.2d at 790 (citation omitted).

15. *Reeves v. Alyeska Pipeline Serv. Co.,* 926 P.2d 1130, 1134 (Alaska 1996) (citing *Zeman v. Lufthansa German Airlines,* 699 P.2d 1274, 1280 (Alaska 1985) (citation omitted)).

16. *Id.* (citation omitted).

17. *Duty Free Shoppers Group Ltd. v. State,* 777 P.2d 649, 652 (Alaska 1989) (citation omitted).

18. *See supra* note 8.

19. *Id.*

20. The relevant provision is section 1 of the Krogstad/UAL sublease:

> PARTIES. This lease ... is made by and between SAM KROGSTAD and REBECCA FOX-KROGSTAD, as husband and wife ("Lessor") and UNITED AIRLINES ("Lessee").

UAL does not argue, and the record does not establish, that the contract language "agents, contractors, employees, servants, invitees or licensees" applies to the state.

### 2. The facts of this case do not require us to address UAL's status as an insurer or non-insurer.

UAL urges us not to treat it as an insurer. It argues that insurance contracts can and often are construed as contracts of adhesion,[21] while commercial leases and commercial contractual indemnity provisions are seldom construed in this manner. UAL correctly notes that commercial leases frequently do not involve parties in "disparate bargaining positions," as is often the case with insurance contracts. But the fact that UAL and the Krogstads are both sophisticated parties does not assist UAL's claim that the state's third-party claim falls outside the coverage of the Krogstad/UAL sublease. Indeed, to the extent the two parties are sophisticated commercial entities,[22] UAL could reasonably expect the broad indemnity provision of section 7.5(b) of the sublease to cover claims exactly like this one—i.e., claims arising out of UAL's routine, authorized use of the premises.

Furthermore, section 13 of the Krogstad/UAL sublease gave UAL notice of the Krogstads' relationship with the state and the duties the Krogstads undertook to the state: "[UAL] hereby accepts the Premises subject to the terms and provisions of the prime lease between the State of Alaska and the [Krogstads]." The sublease UAL signed with the Krogstads contained undertakings equivalent to those undertaken by the Krogstads to the state. UAL could reasonably expect that it faced potential liability arising from the Krogstads' contractual relationship with the state.

Finally, we have stated that "the cost of insurance to cover indemnification" can be incorporated into the costs of conducting business.[23] Any uncertainty relating to UAL's potential liability due to the indemnity clause should properly have been reflected in the price UAL paid to sublease the premises. In any event, we do not need to treat UAL as an insurer to give reasonable effect to the plain language of the Krogstad/UAL indemnity clause.[24]

UAL also urges us not to treat its obligation under the Krogstad/UAL sublease as we might treat the obligation of a similarly situated insurer.[25] We have held that "where an insurer breaches its contract, it is liable for the amount of a reasonable settlement reached by the insured which falls within the coverage provided by the policy." [26] UAL cites *Rogers & Babler, Division of MAPCO Alaska v. State*[27] in arguing that this court has not imposed such "penalt[ies]" on non-insurers, particularly under simple indemnity agreements. But *MAPCO* does not require us to determine whether the indemnity clause puts UAL in the position of an insurer. In the *MAPCO* passage UAL cites, we were primarily addressing whether

---

**21.** *Bering Strait Sch. Dist. v. RLI Ins. Co.,* 873 P.2d 1292, 1294–95 (Alaska 1994).

**22.** UAL's vice president of airport affairs signed the Krogstad/UAL sublease.

**23.** *Manson–Osberg Co. v. State,* 552 P.2d 654, 659 (Alaska 1976) (giving effect to plain language of indemnity clause as "reasonably construed" in commercial cases because insurance is increasingly used as means of allocating risk); *see also Burgess Const. Co. v. State,* 614 P.2d 1380, 1383 (Alaska 1980) (holding anticipated costs of obtaining insurance to cover indemnification included as part of bid on project); *but cf. Kissick v. Schmierer,* 816 P.2d 188, 191 n. 4 (Alaska 1991) (refusing to adopt unambiguous-language-of-an-indemnity-clause-as-reasonably-construed approach for non-commercial setting because non-commercial cases are distinguishable: for example, commercial entities are usually in essentially equal bargaining positions, unlike non-commercial entities; also, commercial entities can incorporate cost of insurance to cover indemnification).

**24.** *Manson–Osberg,* 552 P.2d at 659.

**25.** *E.g., C.P. ex rel. M.L. v. Allstate Ins. Co.,* 996 P.2d 1216, 1222 (Alaska 2000) ("[W]here a clause in an insurance policy is ambiguous in the sense that it is reasonably susceptible to more than one interpretation, we accept the interpretation that most favors the insured.").

**26.** *Grace v. Ins. Co. of N. Am.,* 944 P.2d 460, 464 n. 7 (Alaska 1997) (citing *Afcan v. Mut. Fire, Marine & Inland Ins. Co.,* 595 P.2d 638, 646–47 (Alaska 1979)).

**27.** 713 P.2d 795, 800 n. 4 (Alaska 1986) (reasoning that because contractual indemnitor had no duty to defend in that case, court need not reach issue whether contractual indemnitor was liable for whole settlement where it refused to tender defense).

an indemnity clause stating that "[t]he contractor shall indemnify and save harmless [the indemnitee]" also implied a duty to defend.[28] We held that it did not and that nothing else in the clause suggested that it did.[29] We did not address issues relating to treating non-insurers as insurers.

In any event, the plain language of the Krogstad/UAL sublease imposes duties on UAL with respect to lawsuits arising from its use of the premises. Because UAL could reasonably expect to cover under the Krogstad/UAL sublease the state's third-party claim against the Krogstads, there is no need to consider whether an indemnity clause issued by a commercial non-insurer should be given the same interpretation as an indemnity clause issued by an insurer. Our determination that UAL's liability extends to the state's third-party claim against the Krogstads turns on interpretation of the plain language of the indemnity clause of the sublease. It does not, as UAL argues, require all future "contractual indemnitors, in all commercial settings, [to] become insurers." [30]

### 3. UAL's remaining arguments do not require us to reverse the superior court's grant of summary judgment to State Farm.

 UAL argues that State Farm would have no subrogation claim against UAL had State Farm not breached duties it owed to the state. UAL cites *Alyeska Pipeline Service Co. v. H.C. Price Co.* as support for the proposition that the remedy for breach of contract is to place the non-breaching party in the same legal position it would have occupied but for the breach.[31] *Alyeska* differs from the current dispute because the party bringing suit in *Alyeska* was a party to the contract.[32] UAL is simply a third party requesting relief for an alleged breach of an agreement—the State Farm insurance policy covering the state—to which UAL is not a party. It cannot rely on any breach of duty State Farm owed the state. Because the State Farm policy covering the state and the Krogstads imposed no duty benefitting UAL, any possible breach by State Farm is irrelevant to UAL's duties to the Krogstads.

UAL further argues that it should only be forced to pay some pro rata share of the indemnity and defense obligation and that UAL and State Farm were "joint insurers." The plain language of section 7.5(b) of the Krogstad/UAL sublease dooms these arguments. The Krogstads were contractually required to indemnify the state for losses arising from UAL's use of the subleased premises, and the Krogstads simply transferred that liability to UAL via the sublease indemnity clause. The settlement paid by State Farm arose out of UAL's use of the premises. UAL's obligation to indemnify the Krogstads under the indemnity clause does not depend on State Farm's actions as the state's or the Krogstads' insurer.

In its reply brief UAL questions the reasonableness of the settlement. The issue was not before the superior court and is therefore not now properly before us.[33]

## IV. CONCLUSION

Because we hold that the plain language of the indemnity clause requires UAL to indemnify the Krogstads, we AFFIRM the superior court's final judgment in favor of State Farm.

---

**28.** *Id.* at 800.

**29.** *Id.* at 799–800.

**30.** In addition, nowhere in *MAPCO* were we called upon to decide whether to treat non-insurers as insurers. *See id.* at 800 n. 4 (declining specifically to address this issue in context of liability flowing from breach of duty to defend).

**31.** 694 P.2d 782, 787 (Alaska 1985) (citations omitted).

**32.** *Id.* at 784.

**33.** *Pierce v. Pierce*, 949 P.2d 498, 500 (Alaska 1997) (citation omitted).