**John HALE, Appellant,**

v.

**FIREMAN'S FUND INSURANCE COMPANY, Appellee.**

**No. S–1157.**

Supreme Court of Alaska.

Jan. 30, 1987.

Michael W. Flanigan, Clark, Walther & Flanigan, Anchorage, for appellant.

John C. Dittman and Daniel T. Quinn, Richmond & Quinn, Anchorage, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

John Hale appeals from the superior court's grant of summary judgment in favor of Fireman's Fund Insurance Company. Hale, an employee of the insured's grocery store, was injured at the store while unloading watermelons in the course of the insured's separate produce stand business. The superior court held that because Hale was injured at the grocery store, the "premises-operations" provision of the produce stand liability policy did not cover Hale's injuries. While we find that the court erred in so holding, we also find that because the policy excluded coverage for injuries arising out of the unloading of an automobile, the court's error was harmless.

## I. FACTS AND PROCEEDINGS

### A. *The Accident.*

Bruce Swanson, the named insured, owned three separate businesses: a trailer park, a produce stand and a grocery store. On June 18, 1982, Swanson delivered a pickup truck full of watermelons to the grocery store for storage because he did not have sufficient storage space for the watermelons at the produce stand.

Swanson directed John Hale, a grocery store employee, and another store employee to unload the watermelons from the truck into a large container. Hale was told to get inside the container to receive the watermelons. Hale was unable to climb into the container, so he mounted the truck's tailgate and attempted to jump into the container. He struck his head on a low hanging beam, and then fell striking his head on the tailgate. He suffered serious head and neck injuries, which have left him with permanent physical and mental impairment.

### B. *The Insurance.*

On May 4, 1982, Bruce Swanson had obtained an "Owners, Landlords & Tenants" liability insurance policy ("OLT–Form 105035") covering only his trailer park. OLT–Form 105035 insured Swanson for bodily injury and property damage liability "caused by an occurrence and arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental thereto." This form excluded coverage for bodily injury "arising out of the ownership, maintenance, operation, use, loading or unloading of (1) any automobile ... owned or operated by ... any insured." The form also excluded coverage for bodily injury "to any employee of the insured arising out of and

in the course of his employment by the insured."

On May 15, 1982, Swanson amended his policy by adding his produce stand business to his trailer park policy. The general amendment endorsement deleted OLT–Form 105035 (the Owners, Landlords & Tenants coverage and exclusions), and added Form 105040, thereby making the policy a "Comprehensive General Liability" ("CGL") policy. The general amendment endorsement states plainly on its face that "ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED."

The newly added CGL–Form 105040 is a three-page form. CGL–Form 105040 provides for coverage and exclusions. On page one, under the description of hazards covered, the form reads: "PREMISES–OPERATIONS Included [typewritten]". On page two, under "COVERAGE," the form provides that Fireman's Fund will provide coverage for bodily injury "caused by an occurrence." The CGL–Form does not contain the "arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental thereto" provisions found in the deleted Owners, Landlords & Tenants Form 105035. Finally, on page two of the newly added endorsement, the CGL–Form excludes coverage for bodily injury "arising out of the ownership, maintenance, use, loading or unloading of (1) any automobile" owned or operated by the insured, or for bodily injury "to any employee of the insured arising out of and in the course of his employment by the insured."

Swanson also had an automobile policy on his pickup truck with Allstate. He had neither liability insurance nor workers compensation insurance for the grocery store.

Following the accident, Swanson notified and demanded coverage from both Fireman's Fund and Allstate. Allstate ultimately paid the policy limits under its automobile policy. Fireman's Fund denied coverage pursuant to an exclusion for bodily injury arising out of the use, loading or unloading of an automobile, and an exclu-

sion for bodily injury to an employee of the insured arising out of the course of his employment.

Faced with Fireman's Fund's continued denial of coverage, Swanson ultimately confessed judgment and assigned his interest in the policy to Hale, who agreed not to execute on a judgment against Swanson's assets. Hale then commenced his direct action against Fireman's Fund pursuant to Swanson's confession of judgment and assignment of rights.

## C. *The Proceedings.*

After Hale commenced his action against Fireman's Fund, and following numerous depositions and pleadings, Fireman's Fund moved for summary judgment pursuant to Alaska Civil Rule 56. Fireman's Fund argued that the produce stand's comprehensive general liability policy did not cover injuries occurring at the grocery store, and that even if it did extend to that location, the loading/unloading automobile exclusion and the employees/workers compensation exclusions entitled Fireman's Fund to deny coverage.

Following oral argument, the superior court granted Fireman's Fund's motion for summary judgment. It expressly declined to reach the exclusions issue, holding that "the premises provisions in the [produce stand] policy" did not cover the grocery store. Hale's motion for summary judgment was also denied.

## II. DISCUSSION

### A. *The Scope of Premises-Operations Coverage.*

A motion for summary judgment is to be granted only when the record indicates that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Alaska R.Civ.P. 56(c). Further, "[t]he construction of an insurance contract is a matter for the court, unless its interpretation is dependent upon the resolution of controverted facts." *O'Neill Investigations v. Illinois Employ-*

*ers Ins. of Wausau,* 636 P.2d 1170, 1173 (Alaska 1981).

Well-known principles of insurance contract interpretation govern the analysis of the question of coverage in this case.

> An insurance policy may be considered a contract of adhesion, and as such, should be construed to provide the coverage which a lay person would have reasonably expected, given a lay interpretation of the policy language.... To ascertain the reasonable expectations of the parties, we look to the language of the disputed policy provisions, the language of other provisions of the insurance policy, and to relevant extrinsic evidence. In addition, we refer to case law interpreting similar provisions.

*Stordahl v. Government Employees Ins. Co.,* 564 P.2d 63, 65–66 (Alaska 1977) (footnotes and citations omitted). Furthermore, "provisions of coverage should be construed broadly while exclusions are interpreted narrowly against the insured." *Starry v. Horace Mann Ins. Co.,* 649 P.2d 937, 939 (Alaska 1982) *quoting Hahn v. Alaska Title Guar. Co.,* 557 P.2d 143, 145 (Alaska 1976).

Hale argues that a lay person would reasonably expect that the comprehensive general liability policy which covered the premises and operations of the produce stand would extend coverage to off-premises risks which arise from necessary and incidental produce stand operations. Looking first at the language of the disputed policy provisions, the comprehensive general liability policy provides simply that "premises-operations" are a hazard which is "included." Contrary to the assertion by Fireman's Fund that the coverage was expressly limited to Swanson's operations at the trailer park and the produce stand, there is no express provision so limiting the provision "PREMISES–OPERATIONS Included."

Looking next to other provisions of the policy and relevant extrinsic evidence, Swanson's original Owners, Landlords & Tenants policy insured against damages because of bodily injury "arising out of the ownership, maintenance or use of the insured premises *and all operations necessary or incidental thereto.*" (Emphasis added). A leading insurance treatise states:

> Where the policy expressly covers not only the risks involved in the use of the designated premises, but also declares that it covers operations which are necessary or incidental to the operations conducted on the premises, there is coverage of off-premises risks which arise from such necessary and incidental operations conducted off the premises.

M. Rhodes, *Couch on Insurance* § 44.308, at 478 (rev. 2d ed. 1984).

Reading the policy in light of the earlier policy's provisions, a reasonable lay person could only conclude that both the premises and the operations of the business were included in the policy's coverage. Since, for purposes of Fireman's Fund's motion for summary judgment, we must assume that the accident occurred in the course of the produce stand business, the trial court erred in finding that as a matter of law Hale's injury was not covered under the policy.[1]

### B. *Policy Exclusions.*

This court will not disturb a proper result, regardless of the reasoning employed below. *Davis v. Hallett,* 587 P.2d 1170, 1171 (Alaska 1978). Thus, if summary judgment is justified on grounds other than those stated by the trial court, the judgment will be affirmed.

As discussed above, the superior court granted summary judgment on the improper ground that Hale's injury was not covered by the "premises-operations" provision

---

**1.** Fireman's Fund apparently argues that, even if the policy covers off-premises operations, because the accident occurred on the premises of an uninsured business, Hale's injuries are not covered by the policy. This argument is without merit. The policy does not distinguish operations occurring on the premises of an uninsured business, and we see no reason to read such a distinction into the policy.

of the produce stand policy. The superior court did not address the exclusionary clauses of the policy. We find that one of these exclusions is applicable here and supports the award of summary judgment.

■ Fireman's Fund's motion for summary judgment was based in part on its contention that the produce stand's comprehensive general liability policy contained several valid exclusions under which Fireman's Fund was entitled to deny coverage. Among other exclusions, the CGL policy excluded coverage for bodily injury "arising out of the ownership, maintenance, use, loading or unloading of (1) any automobile" owned or operated by the insured.[2] An endorsement to the original trailer park policy defines "loading or unloading" as follows:

'[L]oading or unloading' with respect to an automobile, means the handling of property after it is moved from the place where it is accepted for movement into or onto an automobile or while it is in or on an automobile or while it is being moved from an automobile to the place where it is finally delivered, but 'loading or unloading' does not include the movement of property by means of a mechanical device (other than a hand truck) not attached to the automobile.

Hale contends that his claim is not barred under the "loading or unloading" exclusion because 1) he was not engaged in unloading the watermelons when the accident occurred; and 2) the presence of the truck was incidental and was not the cause of the accident.

Neither of these arguments has any merit.

First, we believe the parties intended that accidents like Hale's would be excluded from coverage. In *Marwell Constr. v. Underwriters at Lloyd's, London,* 465 P.2d 298 (Alaska 1970), this court quoted with approval from *Johnson, Drake & Piper v. Liberty Mutual Ins. Co.,* 258 F.Supp. 603, 610 (D.Minn.1966): " '[T]he parties most likely intended to cover, under the "loading-unloading" clause, all hazards from the initial loading until the goods were unloaded including all incidental and necessary parts of the loading process....' " *Marwell Constr.,* 465 P.2d at 304. While *Marwell Construction* involved the interpretation of a clause in an auto policy explicitly *including* hazards arising from loading and unloading, we think similar reasoning applies to this case: it would be unreasonable to limit the scope of the exclusion to accidents occurring while the injured party is holding in his hands an item to be unloaded.

Second, Hale's argument that the unloading activity was incidental to the accident is misguided. We are not here determining questions of tort liability. *Marwell Constr.,* 465 P.2d at 304. Rather, we are seeking to determine the intentions of parties to a contract. *Id.* It is not necessary that the unloading be the sole cause of the accident in order for coverage to be excluded. *Id.* It is enough that Hale's injuries arose from the unloading of the vehicle within the meaning of the policy language and the intentions of the parties.

Because the insurance policy excluded coverage for injuries arising from the unloading of an automobile, and because Hale's injury fell within the scope of this exclusion, the trial court's grant of summary judgment must be affirmed.[3]

2. Although the superior court did not reach the "loading-unloading" exclusion issue, the parties conceded at oral argument that the record contains sufficient facts to allow us to decide the issue.

3. The parties dispute whether Swanson had received prior to the accident those pages of the CGL policy containing the exclusions, and what the legal effect would be if he had not received those pages.

The exclusions in the CGL policy are identical to those contained in Swanson's original Owners, Landlords & Tenants policy. Nothing in the record suggests that when Swanson changed the coverage to include the produce stand, he intended that the exclusions be deleted and that the new policy be without exclusions. He stated at his deposition that he expected that the new policy would contain exclusions. It would be unreasonable to hold that a policy's exclusions are without effect between the time a person

## C. *Attorney's Fees.*

Finally, Hale contends that the superior court erred in awarding attorney's fees to Fireman's Fund because Fireman's Fund did not provide the court with an itemized list detailing the time spent and the services rendered. Fireman's Fund incurred $42,603 in attorney's fees, and the superior court granted an attorney's fees award of $10,600 to Fireman's Fund.

Hale's argument is without merit. Fireman's Fund submitted both a list of hours expended and amounts the hours represented, and also a brief description of the services performed. Further, as Fireman's Fund argued to the superior court, the voluminous pleadings, numerous depositions, and correspondence provided Hale with more than sufficient information as to the basis of Fireman's Fund's attorney's fees request.[4]

The judgment of the superior court is AFFIRMED.

---

changes his coverage and the time he receives a copy of the new policy. Whether Swanson had received a copy of the new policy at the time of the accident is therefore irrelevant.

4. Hale also argued on appeal that the superior court erred in failing to rule on his motion to compel discovery and for sanctions before it granted Fireman's Fund's motion for summary judgment. Hale's attorney stated at oral argument that the requested discovery was relevant to the question of delivery of the new policy, not to its meaning. In light of our finding that the question of delivery is irrelevant (*see supra* note 3), we need not address this contention.