*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| LISA THOMPSON, | ) | |
| | ) | Supreme Court No. S-18462 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-20-06539 CI |
| v. | ) | |
| | ) | O P I N I O N |
| UNITED SERVICES AUTOMOBILE | ) | |
| ASSOCIATION and MATTHEW | ) | No. 7682 – January 26, 2024 |
| MRZENA, | ) | |
| | ) | |
| Appellees. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Yvonne Lamoureux, Judge.

Appearances: Jeffrey J. Barber, Barber & Associates, LLC, Anchorage, for Appellant. Cheryl L. Graves, Farley & Graves, P.C., Anchorage, for Appellees.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

HENDERSON, Justice.

## I. INTRODUCTION

A woman was severely injured while moving an inoperable airplane. She now seeks to recover from her husband's homeowner's insurance policy. The insurance policy excludes injuries "arising out of" the ownership, maintenance, use, loading or

unloading of an aircraft. The policy further defines "aircraft" as "any conveyance used or designed for flight."

The woman claims that the policy should cover her injury because in her view the aircraft became mere "parts" after her husband removed the wings, elevators, and tail rudder. The superior court disagreed, concluding that the fuselage was still an "airplane" and that, in any event, her injuries arose from her husband's ownership of the aircraft. The court determined that her injuries were therefore not covered by the policy. The woman appeals.

Agreeing with the superior court's interpretation of the homeowner's insurance policy exclusion, we affirm.

## II.   FACTS AND PROCEEDINGS

### A.   Facts

Around 2011 Matthew Mrzena purchased a 1946 Piper PA-12 airplane (Piper).[1] Mrzena stopped using the Piper in 2014 when it failed an annual inspection and was deemed no longer airworthy. In particular, the Piper's exterior fabric covering was in disrepair. In order to repair the covering, Mrzena removed the wings, tail rudder, and elevators from the fuselage, leaving the remainder of the fuselage and many other parts intact, including the wheeled landing gear, propeller, seats, windows, and engine. Mrzena kept the Piper in a plastic temporary garage at his home in Palmer.

In 2019, Mrzena purchased a new residence where he planned to live with his now-wife Lisa Thompson. During the summer Thompson and Mrzena were in the process of moving their belongings, including the Piper, to the new home. As part of the move the Piper needed to be pushed out of the garage and onto a trailer. Mrzena was pushing from the back of the Piper, with Thompson at the front, when Thompson became pinned under the Piper's nose. Thompson's resulting injuries were severe.

---

[1]     We use "Piper" here as a default term for clarity. We also use the term "fuselage" to include the Piper's fuselage with other parts attached.

During this time Mrzena had the Piper registered as an aircraft with the Federal Aviation Administration (FAA). He also held an aircraft owner-specific liability policy on the Piper with Avemco Insurance Company (Avemco). Throughout his ownership of the Piper, Mrzena had continued to renew both the Piper's FAA registration and the Avemco aircraft policy. Mrzena also held two homeowner insurance policies with USAA at the time of Thompson's injuries, one related to the residence Mrzena was moving from and one related to the new home he and Thompson were moving into.

### B.     Proceedings

In December 2019 Thompson sued Mrzena to recover damages for her injuries. Nearly two years later, Thompson, Mrzena, and Avemco entered into a settlement agreement under which Avemco paid Thompson $57,500.

In the meantime, in June 2020, USAA filed a separate action in superior court seeking a declaration that Thompson's personal injury claims were excluded from coverage under Mrzena's two USAA homeowner's insurance policies. USAA moved for summary judgment, seeking a determination that Mrzena's two USAA policies did not cover Thompson's injuries. Thompson opposed and Mrzena joined her, both cross-moving for summary judgment to establish that the policies covered Thompson's injuries.

The superior court granted USAA's motion for summary judgment and denied Thompson's cross-motion for summary judgment. The court noted that aside from applying to different residences, both policies were identical. Examining the policy language, the court noted that both excluded liability for "bodily injury . . . [a]rising out of . . . the ownership, maintenance, use, loading or unloading of . . . an 'aircraft' " (aircraft exclusion). Each policy defined "aircraft" as "any conveyance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo."

The court identified "the primary question . . . regarding coverage [as] whether Thompson's injuries arose out of the ownership or use of an aircraft." Noting that "arising out of" requires only "some causal connection" between the injury and the activity — not a strict proximate cause determination — the court reasoned that "even if Thompson's injuries were proximately caused by *only part of an aircraft*, the injuries may still be causally connected to the ownership of an aircraft." (Emphasis added.)

The court then turned to the definition of "aircraft" under the policy, as relevant both to determining whether Mrzena and Thompson were using an aircraft and to determining whether Mrzena owned an aircraft at the time of the incident. It began with the policy's definition of "aircraft": "any conveyance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo." It considered Thompson's argument that "conveyance" meant "a means of transport," and that a fuselage could not be considered a means of transport because it was only "part" of an aircraft. It also considered USAA's argument that aircraft parts like a fuselage were part of the definition of "aircraft" because "designed" means "planned or conceived in detail or for a specific purpose" and the aircraft parts were designed for flight.

The court concluded that "[t]he phrase 'conveyance used or designed for flight' must be read as a whole." And considering the reasonable expectations of the insured, the court concluded that "[n]o reasonable person would expect" that an insured no longer owned an aircraft solely because the aircraft had been "partially disassembled to make repairs . . . particularly . . . given that the policies exclude coverage for injuries arising out of 'maintenance' of an aircraft," which often requires removing parts. The court rejected Thompson's argument that the policy's definition of "aircraft" should result in coverage of an injury incurred while moving inoperable parts. It described her argument as "unreasonably narrow[ing] the aircraft exclusions" to require proximate cause, with exclusions only applicable to a fully assembled, operable plane.

4                                                                      7682

The court also considered extrinsic evidence related to the insured's reasonable expectations, looking to a photograph of the Piper in its state at the time of Thompson's injury. It noted that the Piper's wings and part of the tail were removed, but that the fuselage "remain[ed] attached to other parts, including the landing gear and propeller." It noted that only parts requiring repair appeared to have been removed, and that the Piper "otherwise resemble[d] an aircraft in size and form." The court concluded that "[a] reasonable person would readily be able to identify the Piper . . . as an aircraft." The court further noted Mrzena's continued registration of the Piper with the FAA over the years, as well as his measures to insure the Piper under an aircraft liability policy through Avemco.

Thompson appeals, contending that the superior court misinterpreted the USAA policies' aircraft exclusion. Seeing no error, we affirm.

## III. STANDARD OF REVIEW

We review a grant of summary judgment de novo, affirming "if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law."[2] When making this determination we draw all reasonable inferences in favor of the non-movant.[3]

"If in reviewing a summary judgment [order] we must answer questions of law, we will adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[4] "Moreover, we may affirm a grant of summary judgment on grounds other than those advanced by the [trial] court or parties."[5]

---

[2] *Alakayak v. B.C. Packers, Ltd.*, 48 P.3d 432, 447 (Alaska 2002) (citing *Moore v. Allstate Ins. Co.*, 995 P.2d 231, 233 (Alaska 2000)).

[3] *Moore*, 995 P.2d at 233.

[4] *Id.*

[5] *Id.*

## IV.  DISCUSSION

Interpreting USAA's aircraft exclusion pursuant to the reasonable expectations of the lay insured, we conclude that the policy's exclusion of coverage for injuries arising out of the ownership or maintenance of an aircraft applies here to exclude coverage for Thompson's injuries.  Regardless of whether the Piper was an airplane or a collection of airplane "parts" when it injured Thompson, the injury arose out of Mrzena's ownership.  And counter to Thompson's argument, we observe that the superior court did not improperly draw inferences in USAA's favor.  In light of these conclusions, we need not decide whether the Piper ceased to be an aircraft.  We therefore affirm the superior court.

### A.  The Policy Excludes Coverage For Thompson's Bodily Injuries Because They Arose Out Of Mrzena's Ownership And Maintenance Of The Piper.

"Insurance policies are construed . . . to honor a lay insured's reasonable expectations."[6]  "Generally, we determine the liability of an insurer by the terms of the policy the insurer has issued."[7]  "The objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations."[8]  "Policy language is construed in accordance with ordinary and

---

[6]  *Ball v. Allstate Ins. Co.*, 426 P.3d 862, 865 (Alaska 2018) (quoting *State Farm Mut. Auto. Ins. Co. v. Dowdy*, 192 P.3d 994, 998 (Alaska 2008)).

[7]  *Kalenka v. Infinity Ins. Cos.*, 262 P.3d 602, 607 (Alaska 2011).

[8]  *Bering Strait Sch. Dist. v. RLI Ins. Co.*, 873 P.2d 1292, 1295 (Alaska 1994) (quoting *State v. Underwriters at Lloyds London*, 755 P.2d 396, 400 (Alaska 1988)).

customary usage."[9]  "We recognize a restriction on coverage if an insurer by plain language limits the coverage of its policy."[10]

Thompson argues that although USAA's homeowner's insurance policy excludes injuries arising out of airplane ownership, maintenance, use, and other activities, it nonetheless covers injuries caused by "airplane parts."  USAA responds that Thompson's injuries "arose out of" Mrzena's ownership of the Piper, so they cannot be covered as a matter of law.  The superior court concluded that "even if the fuselage was the immediate cause of Thompson's injuries, the injuries still arose out of Mrzena's ownership of the whole Piper."

We agree with the superior court.  We begin our analysis with the policy's language.  The USAA policy broadly excludes coverage for bodily injury "arising out of" not only use, loading, and unloading, but also ownership and maintenance of an aircraft.  This language supports the reasonable expectation that Thompson's injuries would not be covered because Mrzena and Thompson's movement of the fuselage, and her resulting injuries, "ar[ose] out of" Mrzena's ownership and maintenance of the Piper.  As USAA argues, a reasonable person would understand that the terms of the policy exclude bodily injury "that has a causal connection to the possession and control over (ownership [of]) an airplane."  Regardless of which particular "part" struck Thompson, the injury was causally connected to Mrzena's ownership of the Piper and the homeowner's policy therefore excluded coverage.

As the superior court noted, given the clear language of the policy exclusion, "it would be unreasonable to limit the scope of the aircraft exclusion to accidents occurring only while the aircraft is fully assembled and operable."  Indeed, to conclude otherwise would ignore the policy's exclusion of coverage for bodily injury

---

**9**    *Dowdy*, 192 P.3d at 998.

**10**   *Whittier Props., Inc. v. Alaska Nat'l Ins. Co.*, 185 P.3d 84, 88 (Alaska 2008).

arising out of maintenance of an aircraft. The superior court logically observed that "[m]aintenance often requires removing parts in order to repair or replace them" and reasonable plane owners would not expect that their planes cease to be aircraft "solely because the aircraft had been partially disassembled to perform that maintenance."

Consistent with that logic, Mrzena testified that he removed the wings, tail rudder, and elevator to repair damage to the plane's exterior fabric, and to begin the process of re-covering the components. The fact that several years elapsed between Mrzena's initial removal of the Piper's fabric covering in 2014 and the time of Thompson's injuries in 2019 does not remove the connection between those injuries and Mrzena's ownership and maintenance of the airplane. And regardless of the incomplete state of repairs, Mrzena and Thompson's movement of the Piper to their new home still arose out of Mrzena's ownership of an aircraft. The clear and unambiguous policy language excluding injuries arising out of ownership or maintenance of an aircraft forecloses Thompson's argument that her injuries here were covered by the policy.

We are not persuaded by Thompson's argument that the USAA policy's separate provisions on property damage demonstrate that "USAA knew how to distinguish . . . 'parts' " from a thing itself, and that this narrows the exclusion of coverage for personal injuries arising out of the ownership or maintenance of an aircraft. The property section states that the policy does not cover "motor vehicle(s)" including but not limited to " 'aircraft' and parts." But the property section involves damage to things, not bodily injury. And crucially, the property section does not use "arising out of" language in describing coverage, or exclusions from coverage, for property damage. Adopting Thompson's reasoning would disregard important differences in the language of the separate sections of the policy.

Our precedent supports our interpretation. In *Hale v. Fireman's Fund Insurance Co.*, we considered a claim brought by a grocery store employee who suffered serious head and neck injuries resulting in permanent physical and mental

impairment while unloading watermelons from a pickup truck into a container.[11]  The man climbed onto the truck's tailgate and attempted to jump into the container, striking his head on a low-hanging beam and then falling on the tailgate.[12]  The relevant insurance policy excluded coverage for bodily injury "arising out of the ownership, maintenance, operation, use, loading or unloading of" automobiles.[13]  We affirmed the superior court's order on summary judgment that the employee's injuries fell in the scope of the exclusion and were not covered.[14]  We held that the insurance company and the insured "intended that accidents like [the employee's] would be excluded from coverage" and that "it would be unreasonable to limit the scope of the exclusion" because the policy's language clearly intended to exclude from coverage hazards associated with loading and unloading.[15]  And we rejected the employee's argument that the unloading activity "was incidental to the accident," noting that "[w]e are not here determining questions of tort liability" but rather seeking to determine contracting parties' intentions in the insurance policy.[16]

We later reaffirmed the broad nature of a homeowner insurance policy's "arising from" coverage provision, as compared with a proximate cause requirement, in *C.P. ex rel. M.L. v. Allstate Insurance Co.*[17]  There, we received certified questions from the federal district court regarding whether a homeowner's insurance policy covered the homeowners' alleged negligence preceding their adult son's assault on a

---

[11]    731 P.2d 577, 578 (Alaska 1987).

[12]    *Id.*

[13]    *Id.*

[14]    *Id.* at 581.

[15]    *Id.*

[16]    *Id.*

[17]    996 P.2d 1216, 1224 (Alaska 2000).

person visiting their home.[18] We held that although the homeowner's policy in question excluded coverage of criminal and intentional acts, it also provided for coverage of injuries "arising from an accident," and thus covered injuries "arising from" the homeowners' alleged negligence.[19] Indeed, we reasoned that that "arising from" language "does not incorporate any requirement that an accident have been 'the proximate cause.' "[20] We further explained: "Nor does it foreclose coverage if an accident was only 'a' cause," because "[t]he language 'arising from' is consistent with multiple causes."[21] As applied here, *C.P.* helps to demonstrate that a proximate cause analysis is inapplicable in determining whether an injury "arose from" a particular thing or event; even if Thompson's injury was proximately caused by a mere airplane "part," the injury "arises out of" Mrzena's ownership or maintenance of the Piper.

We also consider persuasive the U.S District Court for the District of Minnesota's approach in *American Family Mutual Insurance Co. v. Pilarski*, in which a man injured his hand while attempting to winch his friend's boat back into a boathouse.[22] The policy at issue in that matter had a watercraft exclusion similar to the aircraft exclusion here, excluding coverage of bodily injury "arising out of the ownership, supervision, entrustment, maintenance, operation, use, loading or unloading of a watercraft."[23] Much of the Minnesota case involved interpreting the ambiguity of "loading or unloading of a watercraft," which the court found could reasonably mean *either* loading the boat itself by moving it (as into a boathouse or onto a truck) *or* loading

---

[18]     *Id.* at 1222-24.

[19]     *Id.*

[20]     *Id.* at 1224.

[21]     *Id.*

[22]     No. 0:17-CV-04463-KMM, 2018 WL 3193233, at *1 (D. Minn. June 28, 2018).

[23]     *Id.* at *2.

the boat with cargo and people.[24] Evaluating that ambiguity, the court concluded that a reasonable person in the position of the insured could conclude that the insurance company intended the provision to limit exposure from either set of activities.[25] However the Minnesota court determined that there was no genuine dispute that the injuries "flowed from" the homeowner's possession of or control over the boat because if he had not owned the boat, they would not have been in it and using it when the injuries occurred.[26] And the court reasoned that the policy's "arising out of" language, combined with the ordinary meanings of "ownership" and "use," created "broad exclusions for incidents related to boats."[27] Similarly here, we conclude that a reasonable person interpreting the USAA policy language's broad exclusions for ownership, maintenance, and use would understand that the aircraft exclusion was intended to create "broad exclusions" for incidents involving a homeowner's airplane.

Finally, a New York Supreme Court decision supports similar interpretive principles. In *Flood v. United States Fidelity & Guaranty Co.*, the New York court considered a case involving a child injured on Flood's boat stored in a drydock on Flood's neighbor's property.[28] Flood's insurance policy excluded bodily injury "arising out of the ownership, maintenance, operation, use, loading or unloading of any watercraft," but Flood nonetheless sought indemnification and defense, arguing that the exclusion was inapplicable because the boat was merely in storage.[29] The court there held that it did not matter "whether the watercraft is being operated or used, powered or not. All that is necessary is that the injury arose out of the ownership, maintenance,

---

[24]     *Id.* at *3-5.

[25]     *Id.* at *4.

[26]     *Id.* at *5.

[27]     *Id.*

[28]     440 N.Y.S.2d 456, 456-57 (N.Y. Sup. 1981).

[29]     *Id.* at 457.

operation, use, loading or unloading" of the boat.[30]  Similarly here, Thompson's injury arose out of Mrzena's ownership and maintenance of the Piper even though the Piper was in storage, partially disassembled, and not airworthy.  The policy exclusion thus applied.

Thompson asserts that the Piper is not an "actual aircraft" and became mere "aircraft parts" at some point before her injury.  She points to *Dinocenzo v. Aitken*,[31] an Arizona case applying Alaska law that held a fuselage described as an "inert hulk kept as a source of spare parts" and a "carcass . . . in the Arizona desert" was not an airplane because it could not fly.[32]  There, an Anchorage cargo carrier was sued for negligent maintenance of "a C-133 carcass at a location in the Arizona desert" while holding an "Aviation Premises Liability" policy excluding bodily injury for "aircraft owned, chartered, used or operated by or on account of" the Anchorage cargo carrier.[33] Alaska law applied, so the Arizona court required "that the policy be construed to provide the coverage a lay[person] would reasonably have expected from a lay interpretation of policy language with ambiguities to be resolved against the insurer."[34]

Here we need not determine whether the Piper was an aircraft or mere "parts" at the time of Thompson's injuries because we conclude that Thompson's injuries "arose out of" Mrzena's ownership of the Piper.  Moreover, we are not persuaded by *Dinocenzo* as it is distinguishable on two points.  First, and most importantly, the *Dinocenzo* court applied a very different definition of "aircraft" than that contained in the USAA policy in this case.  The *Dinocenzo* court expressly

---

[30]  *Id.* at 458.

[31]  827 P.2d 478 (Ariz. App. 1991).

[32]  *Id.* at 478-79.

[33]  *Id.*

[34]  *Id.* (citing *Weaver Brothers, Inc. v. Chappel*, 684 P.2d 123 (Alaska 1984); *Starry v. Horace Mann Ins. Co.*, 649 P.2d 937 (Alaska 1982)).

acknowledged that it did not have a policy definition to apply, so it turned to the American Heritage Dictionary definition of "aircraft."[35] Because that definition turned on whether a machine was "capable of flight" the court concluded that while it had no doubt that the machine "was once an aircraft" under that definition, "it ceased to be so when it was rendered incapable of flight and kept only as a source of spare parts."[36] Here, the USAA policy contains a different and broader definition of "aircraft": "any conveyance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo." The relevance of the *Dinocenzo* court's reasoning is limited by that distinction.

And second, the *Dinocenzo* fuselage was a bare "carcass" in the Arizona desert with no engine or instruments, whereas the Piper here only had three components missing, with all other components intact, including the engine, propeller, flight controls, other internal components, cockpit, seats, doors, landing gear, brakes, and partial tail assembly. And while the *Dinocenzo* fuselage was used merely as a source of spare parts, the Piper was neither abandoned nor beyond repair; Mrzena testified that he removed the wings, tail rudder, and elevator temporarily to repair them and began the process of re-covering each part in fabric. Given these distinctions, we are not persuaded that *Dinocenzo* is instructive here.

In sum, considering the reasonable expectations of the insured, we conclude that the USAA homeowner's policy excludes coverage of Thompson's injuries because they "arose out of" Mrzena's ownership and maintenance of the Piper.

---

[35] *Id.* at 479.

[36] *Id.*

**B.    The Superior Court Did Not Improperly Draw Inferences In USAA's Favor.**

Thompson also argues that the superior court erred in drawing unreasonable inferences of fact in favor of USAA on summary judgment.[37]  She raises three points, but none of those points are convincing.

First, she argues that the superior court made an improper inference when it stated that "[n]o evidence indicates that Mrzena abandoned any intention to complete the repairs and reassemble the Piper."  She argues that the court's finding that Mrzena still intended to repair the Piper required an inference, because there was no evidence of his intent to continue "after years of failing to do so."  But we are not convinced that the court's statement is an inference at all.  It is a plain statement of the absence of evidence of Mrzena abandoning his intent to repair the Piper.  Moreover, there is factual support for the conclusion Thompson claims the superior court "inferred":  Mrzena expressly testified that he removed the fabric cover to make repairs.

Second, Thompson claims that the superior court inferred that Mrzena "considered the fuselage an aircraft" because he maintained the Avemco aircraft liability policy and made an injury claim and settlement under that policy.  She suggests that the court should have reviewed the Avemco policy and considered how an injury arising from an aircraft part may fall under both USAA's and Avemco's policies without inconsistency.  But in considering the fact that Mrzena continued over time to maintain the Avemco aircraft policy, the court did not improperly draw inferences against Mrzena.  Rather, this was part of the court's proper holistic inquiry into the evidence of Mrzena's expectations from the perspective of a reasonable person in the position of the insured.

---

[37]    Alaska R. Civ. P. 56(c); *Progressive Cas. Ins. Co. v. Skin*, 211 P.3d 1093, 1098 (Alaska 2009).

And last, Thompson claims that the superior court improperly inferred that Mrzena "considered the fuselage to be an aircraft" because he maintained its FAA registration, citing that "there was no evidence about why he continued the registration" and that the registration fee was only $5. But this also does not appear to present an inference by the court. Rather, the court stated the undisputed fact that Mrzena continued to register the Piper as an aircraft with the FAA as one point in analyzing the reasonable expectations of the insured, and the court concluded that Mrzena either "expected *or reasonably should have expected*" that the Piper was an aircraft under his USAA homeowner's insurance policy. (Emphasis added.)

We thus reject Thompson's argument that the superior court improperly drew unreasonable inferences of fact in favor of USAA. We further note that even absent the superior court's consideration of extrinsic evidence as related to the reasonable expectations of the insured, the clear language of the policy exclusion at issue here is decisive.

## V.  CONCLUSION

Seeing no error in the superior court's analysis, we AFFIRM its order granting summary judgment.